Good morning. May it please the court. David Bobet appearing on behalf of the plaintiffs in this case. And at council table with me is Jeffrey Friedman and William Kendall of Reno and I'm from Oakland. I think I'd like to start my argument with the issue of the and I'd also like to reserve five minutes for rebuttal. And I'm looking at the complaint which is captioned Jamie Kirkpatrick individually and as the natural father and legal guardian of B.W. a minor. That's how the case is captioned. There's no other interpretation for this except to say that Jamie Kirkpatrick was appearing on his own behalf as a plaintiff and also in his representative capacity for his daughter B.W. Which he had to do because under Nevada law the action on behalf of a minor child has to be brought by the parent on behalf of the minor child. So the parent is the plaintiff. And I think that's where some of the confusion arises as we go through the complaint. We see the frequent use of the word he to describe situations that pertain obviously to the child. The complaint also alleges in paragraph 13 that B.W.'s constitutional right to be with her parents was violated. Her right was violated. In paragraph 21, the defendants, the punitive damage allegation defendants acted willfully and maliciously and in reckless and callous disregard for the rights of plaintiff and B.W. Where does Kirkpatrick allege his relationship with B.W.? I mean, I take it you were not aware of that. Paragraph 4 in the excerpt is on page 40. Plaintiff is the father and legal guardian of the minor child. So he's acting in the capacity of legal guardian exercising her rights? Correct. Correct. And I don't think anyone could look at this complaint and think otherwise. I mean, I understand that it's not a model of drafting, but it's clear that when he talks about, for instance, the seizure of B.W., that he's not invoking his Fourth Amendment rights. He's invoking her Fourth Amendment rights and that he doesn't have Fourth Amendment rights for the seizure of his child, which the court pointed out. The district court pointed that out in its opinion, but that was sort of turning it on its head because the court was misconstruing the entire complaint. No one made a motion for a more definite statement. And I would also direct the court to And what was their relationship at the time of the seizure? At the time of the seizure, he was an alleged father. He obviously had Appeared to be the father. I mean, he thought he might be, but he He thought he might be the father. The mother said she thinks he's the father. She said there's another possibility. Well, I'm trying to understand what of B.W.'s rights were violated vis-à-vis I mean, Patrick didn't have any rights to I mean, let's say the state had not intervened. He couldn't have told the hospital, here, hand over to me. He had no rights. Well, put the mother aside. Let's say the mother were incapacitated or, you know, let's say, let's just take her out of the picture for the time being. Let's say she went into a coma or something or not able to respond. Could the state, this hospital wouldn't turn the child over to him. He was not married to the mother, so he didn't have any rights in the child that way. He had an established paternity. He had an established guardianship. He hadn't established any relationship with the child at all. The hospital obviously would not have turned the child over to him, right? Well, Judge Kaczynski, I think under the hypothetical that you just noted that you're probably right. I don't think that a hospital, he wouldn't be able to prove any relationship to the child. I mean, the mother is not part of this lawsuit, right? No. Okay. So I'm just wondering what harm the child, assuming that she isn't sufficiently alleged in the complaint, what harm does she allege from the seizure? What harm has the child alleged or the mother? Well, the child. Oh, the child. Well, the child. Or why is there a seizure at all? Well, the reason is. I mean, the hospital has to do something with the child. They did. Basically. In this case, the mother, they had some serious doubts about the mother's ability to care for the child. They did. But these serious doubts did not rise to the level of excusing a warrantless seizure, which. Okay. So what should the hospital have done? Well, the hospital should have not complied with the department's order that. The hospital should have just simply retained the child? The baby is ready to be released. I understand. Mother is still in the hospital, and everybody knows the baby is not going home with the mother. There's no father. And social services very responsibly says, we've got a place for the child. Well, the only reason that dilemma is created is because the department did not go to court and get an order. How long would it have taken? They took her without a court order. How long would it have taken the department to obtain a court order? Well, under ordinary circumstances. We know the police can do it very quickly on the telephone. But Washoe County wasn't set up for that. Washoe County had no procedure in place whatsoever to obtain warrants. And so how long it would take is a matter of speculation depending on how they set up their system. But they didn't have one set up, which raised the Manel issue, that claim in this case. Meaning there's no way the county could get a warrant? Well, the social workers testified that they didn't know how to do it. Those are individuals who hadn't been told how you get a warrant. Nobody. I mean, that's like a police officer who says, I don't know how to get a warrant. But the obligation was under the law for the department to get a warrant. And they can't under the law just go around picking up children when they decide it's necessary. Right. What I'm saying is there was no procedure in place. I understand the social workers were in an unusual situation here. Except for the fact that case law in this circuit, dating all the way back to at least 1995, has said you can't remove a child unless the child is in imminent danger of immediate bodily injury. Let's suppose that I agree that the complaint was properly sets the father out as the guardian of B.W. and that the social workers violated clearly established circuit law with respect to the failure to get the warrant. What kind of damages are you asking for here? The detainer is what, 24 hours? It's 24 hours. So we have 24 hours of a four-day-old baby. So what are her damages? Well, it's a difficult case because the child can't relate what the damages are. Right. So what are the damages? That would probably have to be decided by some kind of expert testimony, people that understand small children, pre-verbal children. What could possibly be other than nominal damages? Well, maybe it is only nominal damages. I think that's an issue that we'll have to address at trial. I don't think that's really an issue that it turns to. There's no claim that she was treated any differently than any other baby would have been treated as being taken care of, right? She wasn't put in handcuffs. She wasn't thrown in jail. She wasn't put on bread and water, right? I mean, it was somebody that took care of a baby. I understand. They gave it the kind of care that they thought a baby needed and deserved, right? That's correct. At the time, there wasn't any claim. It's almost like, well, you're in a – you can't leave. You know, the baby can't leave the hospital. But babies can't leave anyway. They only go where adults make them go. That's right. It's just the nature of babies. Right. But this baby could only leave with the government. Only the government could take this baby out of the hospital. But if you sort of look from its perspective, it's all the same, right? There's just a bunch of huge things out there. I don't know what babies – I don't either. None of us remember. So I just wanted to address the issue of the hospital holding and how that is a seizure because I think at some point in the case, defendants have – Let's talk a little bit about Mr. Kipatrick. He's also slow in asserting any rights to the baby. He says, okay, I'm available for a blood test, but he's not there to stand up for the baby. I mean, what harm did he suffer? I mean, at that point, he had no rights in the baby at all. Right. I understand that. Well, I'm not sure that's true because, first of all, he was there for the delivery. This is a man who's showing interest. Because we have lots of instances of people showing up for delivery, roommates, best friends, same-sex friends. No, but we do have a little bit of a record here. We know that – first of all, we know that they had had a relationship. The mother had had a relationship with Mr. Kirkpatrick. We knew that they were – But there's no way they would have let him walk off with that baby. I'm not saying that. I'm just saying that I'm trying to establish the facts that show that he is not the general public. He had a relationship with her. Well, no, no, I understand. I'm not saying he is the general public. I understand he has some interest in it. But what harm has he suffered since he's not entitled to control the baby until he establishes some legal relationship with the baby? I understand. And he has no rights. Well, if he's the father and if he did have rights at that time and he's the father. But he doesn't have rights. Even if he's a father, he doesn't have rights. I think that's part of what we're arguing about. But I agree with you it's an uphill argument. But all that you've got is a 24-hour period until the hearing is held. And that's 24 hours after the baby is released from the hospital. During that period, nobody has established and he has not asserted that he is the father. He's willing to be tested. So he doesn't really have any damages, does he? He's not the father for that 24-hour period. And that's the only period in question because after that there's a judicial hearing. No, I understand that. But he is actually, well, it's almost like he retroactively suffers damages because we know now that at all times he was the father. How could he possibly suffer retroactive damages? He wasn't prepared to take the baby home. He wasn't taking that child home under any circumstances. I'm going to sort of like make an analogy to a car accident. Someone negligently strikes your car. The other driver sees there's only one person in the car, doesn't see the other person in the car. The other person gets injured. I mean, I think we go back to ordinary principles of ordinary tort law. I guess I think the question we're asking, at least the question I'm asking, is what injury? If he has no right to take the baby, what – and he doesn't. No, but if he's – Later on, he – I guess he alleges at some point later he became the guardian. At that point, he – I mean, if you were married to the mother, if he could show – then I assume under Nevada laws and other states, being married to the mother of the baby automatically gives you legal rights to the baby. But he's not married, right? I understand that. He's not married, so he has no rights at stake. But our society is evolving, and many children are born out of wedlock. So I think we need to make some provision for recognizing liberty interests in fathers who are not married. And I'm almost out of time, and I'd like to save my time for rebuttal. Before you sit down, I would like to ask you about the Winnell claim. Okay. What evidence is there in the record that Washoe County had ever taken a child away from its parents without a warrant and done so when there were no exigent circumstances? Well, we have this case. Okay, so we have this case. And there are other cases, and I'm not sure if they're in the record, but there's at least one other case that I know of where that did happen. There's one other case? At least one other case. It's not in the record. I'm not sure if it's in the record. Well, how do you have a pattern of practice, then, on the part of the county if you don't have any other cases other than this case? Because this is a subject matter in which they required to have a written policy. They had to have a policy that deals with this because it recurs all the time. And the social workers testified. The social workers testified that they were trained not to take the children unless there were exigent circumstances. Evidently, they did so here, which may be a violation of the Constitution. But that doesn't indicate that Washoe has a pattern or practice of depriving parents of their children under nonexigent circumstances. I understand that the training, if there was any at all, was under the State statute, which is a broader statute than the principle that's laid down by this Court. The serious bodily injury part of it, the Nevada statute is broader than that. It talks about neglect, abuse, and I think there's one other descriptive term that they use, which goes beyond the bodily injury element. So because that statute's broader and that's their training, they would not be focused. Do you have any examples? That suggests the statute was too broad. Can you give me an example other than this case of where? No, I'm basing that on the language of the statute itself. Okay. But can you give me an example other than this case where a social worker took a child under circumstances when they shouldn't have and would be prohibited by our cases? They just said that we just don't get warrants. We don't get warrants. Right. But the fact of not getting warrants doesn't mean that it's unconstitutional for them to have taken children in the past. If there are exigent circumstances, it's constitutional. So I'm just asking for one other case other than this one. Well, I could give you one. I could probably give you two, but I'm not sure they're in the record and I don't know if that would be proper for me to do that. Was Linda Kennedy's testimony in the record? I believe so. She testified there was a policy never to get warrants when we remove children. That's right. And that's been held in other cases to be sufficient to at least create a tribal issue of fact as to whether or not there was a Monell violation. And she said there was no policy related to warrants. Right. And that's what happened. That may or may not be, but at least there's the facts that are in the record. And she was a supervisor of Wausau County Child Protective Services, a former supervisor. And it's somewhat difficult to get this kind of information because all of this is shrouded in secrecy and confidentiality. Well, if there are cases, cases are subject to judicial notice, depending on the records in cases, are subject to judicial notice. And, of course, we can take judicial notice and appeal as well. So I'm not sure you're bound by the record. Okay. Well, if I'm not, then I would mention. You have to comply with the requirements of judicial notice, which includes giving opposing counsel a chance to object. We'll do that. And we'll do that. But there is another case pending in the Ninth Circuit right now involving Wausau County in the same issue. We certainly can take judicial notice of our own records. But, again, I think it's important to. Right. And if the Court would like to give us a few days to do that, I'd really appreciate it. If you have two cases, does that show a pattern of practice under Monell? I don't know the number of cases. I don't know that there's a mathematical threshold for that. Did it involve the same social workers in the other case? No. No, different social workers. Where is that case now in the Ninth Circuit? At what stage of the proceedings? It's calendared in March in Pasadena. All right. So it's fully briefed. Fully briefed. And will be argued in Pasadena. Yes. Are you counsel? I'm on the case. I'm not going to do the argument on that case, but I am on it. No, no. I wasn't asking. This is a case in which you are actually yourself involved. Yes. And I gather that the opposing counsel is aware of the case. He is. Well, if you want to give us notice of that, do it in writing. Okay. Thank you. Okay. Well, you managed to use up your time. We'll give you a little time for rebuttal. Oh, thank you very much. Appreciate it. We'll hear from defendants. May it please the Court, Brian Brown on behalf of appellees Amy Reynolds, Ellen Wilcox, and Linda Kennedy. Also at counsel table is Deputy District Attorney Herbert Kaplan, who represents Washoe County in this matter. In the lead-up to the hearing, we divided some time. I believe I'll take between 10 to 12 minutes and give Mr. Kaplan the last five. As long as that is consistent. Well, if you take 12, you won't be able to give him the last five. Yeah, exactly. 10 to 12 is what I meant to say. Thank you for that math correction. This is lawyer's math. It is. It's always how it is, Judge. I'd like to begin by saying there's really two threshold issues before the Court, and the two threshold issues have to surrounding the facts that you've already asked about as to whether or not the parental, the familial relationship between Mr. Kirkpatrick and his minor child was sufficient in order to provide standing for him to have a 14th Amendment due process claim related to a potential deprivation of that familial relationship. The other threshold issue that's before the Court is whether the district court abused its discretion when it dismissed or granted summary judgment on the issue of whether or not the minor child, B.W., was actually a party to the case at the outset. That decision was made pursuant to Federal Rule of Civil Procedure 8. There are certainly other issues that can arise once those threshold questions are addressed. I would like to begin with the issue of the paternal relationship between Mr. Kirkpatrick and the minor child. As the record reflects, the minor child was born on July 15th of 2008. At the time that she was born, it was disclosed by the mother to the hospital staff that she is a chronic addict of methamphetamine, that she had used methamphetamines intravenously in smoking throughout her pregnancy, and that had smoked marijuana or, excuse me, methamphetamines two days prior to delivery. B.W. was born five weeks premature. At the time that she was born on the 15th and the hospital was given that information, they provided or conducted blood tests of the mother and the baby. The blood test for the mother came back negative. The blood test for the baby came back positive for methamphetamine on July 16th of 2008. Counsel is correct that Mr. Kirkpatrick was present during the time that the baby was born. When the baby was tested positive on the 17th, social services was contacted with regard to a potential child in need of protection. Upon that contact, the case was given a high priority, and social workers went to the hospital that same day. They conducted an interview with the mother, and they were also able to talk with Mr. Kirkpatrick. It was established at that time that Mr. Kirkpatrick was a potential father candidate along with others. At that time, Mr. Kirkpatrick was offered an acknowledgment of paternity form to which he could sign pursuant to state law, specifically NRS 126.053. So at that time, Mr. Kirkpatrick, by the social workers, was given the opportunity to establish his legal right immediately as the father of that child. What, under Nevada law, would have been the legal consequences of signing such a form? Certainly, at that point, he would be considered the legal father of the child, and it would have consequences. So he can self-assert as? He can self-assert. You know, we all go to the hospital. If it is an intact family with married, no one asks you for anything. It's in these other circumstances where we have to establish that legal trace. But the acknowledgment of paternity would start the ball and would have him be accepted at that point as a legal father of the child. Go ahead. And would that form later have consequences? I'm just wondering if, let's say, he later wants to deny paternity. Yes, it would. Would signing the form, I mean, sometimes he was the father, sometimes he wasn't, deny paternity. Sure. I certainly don't intend by bringing this up to disparage the difficult choice that he had. He wasn't for sure that he was the father, and he may not have wanted to sign the form for the very reason Your Honor is bringing up. But there would have been consequences had he done so. Absolutely. It would have been harder for him to sort of undo this, and there would have been a presumption at that point that he was going to be responsible for taking care of the child, and she could have brought an action to him for support and so on. Absolutely. I just think it's very ironic that at the time that he was given the opportunity to sign that form to create that legal relationship he chose not to, and now he's trying to say he had that legal relationship six years later in this court. He could have established that relationship. When did he first say he had the legal relationship? Excuse me? When did he first say he had the legal relationship? I believe that as far as when the first time Mr. Kirkpatrick articulated, I couldn't tell you. I believe it was two weeks after the baby was born or after the protective custody hearing. So it's two weeks and some days. I just want to make sure there was no inference that he waited for six years and then did it in a lawsuit. No. The fact is he thought he didn't want to acknowledge it, whatever the legal consequences. Right. He didn't know he was the father. And the mother told him she wasn't sure he was the father. And then he had a blood test, and as soon as he had the blood test, he said he was the father. He acknowledged he was the father, I believe, at subsequent hearings, as Your Honor is aware. Did he sign the form at that time? I don't believe he signed the form at the time after the blood test came back. So once there's a blood test, which conclusively or more or less conclusively, I mean I don't know how sure these things are, but I assume this is like DNA typing, this is pretty sure. So once that happens, does that change his legal relationship to the child? I think at that time it is established that he is the father of the child. But that's a different question. And certainly has legal abilities at that point. I think when you're evaluating whether or not he has the ---- Does he? I don't know. I mean, does simply being the father of the child establish? You're not married to the mother. If you don't sign a form taking responsibility, do you have any legal relationship to the child by virtue of the fact that sort of you have DNA tests that says you're biologically the father? Right. With regard to whether or not he actually had any specific legal relationship to the child at that time, I'm sure there would be something. I think specifically as related to this particular case. Well, I don't know. I mean, you could have a DNA test and it comes back positive. You say, yeah, I was a sperm donor. I have no relationship. So I'm asking a question. So the answer to my question is you don't know. You're trying to answer a question to which you have no idea what the answer is, and you're sitting here trying to tread water and trying to pretend you do. I think that it ---- Do you know the answer to the question? I don't know the answer. Does establishing a biological relationship with a baby create, give you any kind of legal relationship or legal rights to that child under Nevada law? There are three possible answers. Yes, no, I don't know. I would have to say I don't know. But if you have to say I don't know, you should say I don't know. Is this relevant to your argument? Maybe you could explain your argument. I understand your argument. It's that as of the time that this search or seizure took place, there was no interference with his rights. Absolutely. And what it turned out to be later is irrelevant to your position as far as you see it. That's our position, absolutely. At the time of the seizure ---- Well, I don't necessarily agree with your position, so that's why I'm asking these questions. Don't worry. I'll explain it to Judge Reinhardt at the conference why it matters. Let's suppose you've got sort of two questions that you want to address. One has to do with whether Mr. Kirkpatrick has a right to bring a suit on his own behalf here for lost parental rights. And the other is whether he can adequately represent his daughter as her guardian in her own claim. So what's the argument with respect to the second problem? With regard to whether or not the complaint adequately identified the minor child as a plaintiff is the issue. I believe under Nevada law, a parent is able to bring a claim on behalf of the minor child. When analyzing the case under Federal Rule of Procedure 8, you need to look at the totality of the circumstances contained in the complaint. Looking back at the district court's order, the district court went at great pains to look through the complaint, whereas it is continually identified as Mr. Kirkpatrick as being the plaintiff. Well, he's the plaintiff because B.W. can't represent herself. She can't, as Judge Kinsey pointed out, she can't contract with counsel. And paragraph 13 clearly states that B.W.'s constitutional right to be with her parents was violated. I understand that because that was a prerequisite to his claim. In order for him to have a claim, Mr. Kirkpatrick to have a claim of interference with his familiar relationship, there had to be that constitutional tort. Right, but it runs both directions. That is, the right that the parent has to be with the child is congruent to the child's right to be with the parent. Now, that may be a question of damages when you've interfered with that relationship, but it runs in both directions. Now, the problem here is that Mr. Kirkpatrick was not established as the parent on the day in which she suffers the damages. That is correct. And so his claim doesn't sound like there's very much to it. But that doesn't mean that she doesn't have a claim to have had her constitutional rights to be with her parent violated. I understand. And I think the threshold issue is whether or not the complaint adequately identifies her as a plaintiff. This is clearly a pleading argument you're making. It is a pleading argument that we're making. If you look at the language in the complaint, the language clearly is establishing Why is this a Rule 8 problem? Why isn't this a Rule 17 problem? Why isn't this a real party and interest problem? Well, because I believe under Rule 8, it is looking at who the named plaintiffs are and whether it was articulated Her name is right there in the caption. Well, just because her name is in a caption, there's lots of names that can appear. It doesn't say He says he's suing individually. That would be for himself and as the father and legal guardian of B.W. And I think the magic, some of the magic language that was left off that would indicate to someone that the claim is being brought on behalf of is the word behalf as used by counsel in his argument. Nowhere does it assert So they had to use that magic word behalf. I agree it would have helped. And I would agree if they put down plaintiffs instead of plaintiff. But I'm wondering why that's fatal. It doesn't seem like you should have been surprised by the claim. Well, it certainly doesn't name anywhere in the allegations. Paragraph 4 further states that plaintiff is. It defines the word plaintiff that is used throughout the rest of the pleading. Is the father and legal guardian of the minor child. She can't. But she's not capable of bringing the suit herself. So she has to bring the suit on her behalf. I understand. And then in order to put someone on notice that there's actually there's derivative claims or two parties. The next paragraph would be to define the plaintiff B.W. as a plaintiff. And it's being pursued by her guardian. That's the normal course. There were lots of things that could have been done in this complaint to have made it made it more apparent. The question is whether this is insufficient. And I. Why when they granted leave to amend. I mean, this seems just like a gotcha. I think this is the kind of thing that if if the if there really is doubt. I'm not sure there is. But let's say there is doubt about what they meant. The kids be the baby to be in and out. Why does this court say, OK, you've got 30 days to amend. And I think in the additional language of the court order that this was actually, even though it's captioned the second amended complaint, it was the fourth amended complaint that was filed in this case. Did the judge point out at any point that your complaint isn't clear as to whether the daughter is a plaintiff. If you want to amend. Here's the deficiency in the complaint. During the prior amendments, that issue was not addressed. It was only at the end of the case that that issue was addressed. The other amendments were changing other defendant parties. Because I want to tell you how to use your time. But I do have some questions on Monell, which I think probably address Mr. Kaplan to the extent if the court wishes to go to that issue, if we believe that the two threshold issues are the important issues and believe that if you can either affirm those decisions or remand them for further proceedings, I do have information or argument on the qualified immunity analysis as to each one of the claims, the claims potentially by Mr. Kirkpatrick as well as any claim that you may consider by BW. Do you want to hear those now or should I defer? I have 46 seconds to defer to counsel. We'll give you three minutes. May it please the court. Herbert Kaplan, Deputy District Attorney on behalf of Washoe County. I did want to address a couple of the issues that the justices have raised in their questions. The first preliminary issue is the issue of the pleading, the adequacy of the pleading on behalf of the minor child. And while I understand that the caption identifies and states as a legal guardian of BW, it doesn't distinguish in any way that Mr. Kirkpatrick is pursuing this action on behalf of the child. The language in the complaint is clear. The plaintiff is identified in singular as the father and legal guardian of the minor child. Again, as Mr. Are you going to argue the same issue? Well, no. I'd like to go into a little bit more detail because I think You don't want to talk about Monell. I agree. I agree. I want to point out a couple of things before we move on to that. Unless the court's inclined to go straight to Monell and I can address those issues. I would prefer that you move to Monell. In terms of the Monell issues, there is no evidence of any other removals by Washoe County without obtaining a warrant in which there were no exigent circumstances. The record does not have any other issue. There are two other cases that counsel referred to. They were both brought by counsel, and the same parties that are sitting here before the court today are involved in those other cases as well. The same parties or the same counsel? Same counsel. I'm sorry. So this issue is going to be resolved in a case being heard next month? Potentially. I do want to make a clarification. The case that's being addressed next month is on appeal as to the individual workers only. It does not involve Washoe County. Washoe County is still in the case in the district court. The issues have not been resolved at the district court level. So the issue on Monell. Is there a Monell claim in that case? There is. But it hasn't been resolved? It has not. And it won't be resolved next month? It will not be. So why isn't the absence of a procedure to deal with a nonemergency situation, which is something that you could anticipate would arise, why isn't that enough to establish a Monell claim? The pattern of practice being that they don't have any way of dealing with this situation, which is easily foreseeable. We are dealing with taking children away from their parents. Well, because the policy of Washoe County is to remove children only if there's imminent danger, only if there's an immediate danger. How is that policy established? It's established by statute, and it's established by training the workers as to the imminency, as to the immediacy. Well, there's a testimony, isn't there, that at least would raise an issue of similar judgment? There's testimony by a former supervisor that there was no policy related to warrants? That is not incorrect. It's not incorrect. I believe that. There is no policy directly dealing with the issuance of warrants. There has been a practice to obtain warrants or court orders in certain cases. Isn't this a factual dispute? It potentially is, and I'm not sure that that issue is even before the court today. I don't think the district court addressed that issue, and I think that the appropriate thing is if the case is going to be remanded to the court, the district court to allow the district court to address that issue on its initial instance. Okay, thank you. If I have additional time, I do want to make just a couple of different points. Paragraph 13 of the second amended complaint does state B.W.'s constitutional rights to be with her parents was violated. But it's the next statement that follows that that everyone is ignoring. It says, this also resulted in the violation of plaintiff's constitutional right to be with his daughter. The complaint is consistent throughout. It identifies plaintiff as Mr. Kirkpatrick, and B.W. as being someone other than the plaintiff. So in terms of the complaint can't possibly be read to find that there is no claim brought on behalf of the child is clearly inaccurate. Thank you. Thank you. I'll give you a couple minutes for rebuttal if you wish to take it. I wanted to, one of the contentions that was made by the county is that they were not on notice of who was making the claim. And I would like to direct the court's attention to the excerpt of record page 36, which is where the county sets out its affirmative defenses. And in every paragraph of this. Where on page 36? It starts fourth affirmative defense, fifth affirmative defense. Do you see that page? Okay. That's a big page. Where on page 36? Well, the point of this is. That's eight headings. Right. But in each of these paragraphs, I would just direct the court's attention to the word plaintiffs, that in responding to our complaint, they respond as if there's more than one plaintiff. And they're inconsistent about it. Just so none of the students are confused here, this is not a model that you would hold up of complaint drafting, is it? Absolutely not. So the only other thing I wanted to say is if the court had any question at all about the hospital hold being a seizure, because she's seized because she can't leave the hospital. And that, I think, is adequate for a seizure, even though she wasn't put in handcuffs or confined in any way. As far as the Monell claim, I believe in the other case, which is on appeal that we talked about earlier, it's a qualified immunity question. But leave the hospital with whom? Anybody. I mean, even in the abstract. The aunts or the uncle. Anybody. What do you mean? Stolen by the gypsies? You know, she has no right. I mean, the mother is not able to take care of her, and so there's no right there to go with her mother. The father, the putative father, fails to sign the form and hasn't established a biological relationship and hasn't asserted a legal claim and hasn't got a court order, said he was a guardian. Okay. So where does this baby go? Well, I don't think the record. Ask for the car keys to drive off? No. I don't think the record is developed enough to know. But, I mean, aunt, uncle, cousin, brother, anybody who mom could say, I would like this person to take the baby. And the record is not developed enough for that issue, but I think the ultimate. In the absence of an allegation that there was somebody there actually asking to take the baby, the baby on its own can't go anywhere. There's no allegation even that there was anybody in a situation to take her. The father or the putative father doesn't have any rights and doesn't claim any rights. The mother can't do it because she's medically unfit, and there's no one else. You haven't alleged that people are waiting to take this baby away. Well, we haven't, but we're on their motion. We are the opposing party on their motion, and it would be their burden to show that there was no other person who could take the child. And I don't think they've raised that issue and said there was nobody else to take the child. And even if there was, it would still be incumbent upon them to get a court order. They don't get to take the child as a default position without going to court and having a court sanctify that particular taking. That's where our issue is. Let's say, God forbid, a baby is found in the gutter or in a trash can. I mean, things like this do happen. Abandon a doorstep. The state can't come in and as a duty come in and take the child and make sure it gets water and food and medical care? I don't think that's an apt analogy for this reason. That child is in imminent danger. There would be no warrant required. This child was safe in a hospital. The defendant said, this child is safe in this hospital, and they didn't go get a warrant. And they themselves declared to her to be safe in that hospital. That's an admission by the defendants. They admit there was no exigency. The hospital isn't here complaining, right? No, the hospital's not complaining, but we're not suing them. But I'm just saying the county is admitting that this child was safe. These social workers admit that the child was safe. It's more and more like recent cases, not ours, the recent cases about the baby and the mother. Is the mother still a person is one. The other is a baby. Is the mother really deceased? There are a lot of interesting issues that are coming up these days, and I don't think we have to solve any of them here, including yours, at this stage of the proceedings. We were hoping you would. Well, you may be back. And then we can explore all those interesting issues that Judge Kaczynski always likes to explore. These are interesting cases. Thank you very much. Okay, thank you. The cases I just argued were sensitive. We thank counsel for a very fine and interesting argument.
judges: Kozinski, Reinhardt, Bybee